Our last case for oral argument today is United States v. Smith, docket 25-7019. Counsel, please proceed when you're ready. Good morning, Your Honors. Good morning, Counsel. Eric Guzman on behalf of the defendant appellant. May it please the court. The district court in this case committed multiple reversible errors. First, being that it just abused its discretion by failing to grant replacement counsel a continuance and allowed that lawyer to go forward when there was an undisputed declaration filed indicating that the replacement lawyer would not even receive the discovery until 13 days prior to trial. That declaration, which was not disputed, indicated that there would be thousands of pages of discovery, which included some rather highly technical information, reports from technicians that install and service the different body camera and desk camera, data from when those cameras purportedly were turned on and turned off. It would be impossible to familiarize yourself with all that discovery, learn the technical aspects of some of the key parts of the discovery, prepare for the expert witnesses that were going to be called in the case, and go to trial in less than two weeks. When we look at diligence, do we look at the diligence of replacement counsel or do we look at the diligence of the defendant? Well, I think it depends on the context. In here, I think both, regardless of who the court examines, both were diligent. Replacement counsel, very promptly upon being retained, submitted a detailed declaration laying letting the court know why it would not be ready to go forward and why there was good basis for a continuance. Moreover, that replacement counsel immediately contacted the former counsel, the federal public defender, and the U.S. attorney to try to expedite the transfer of the file and the receipt of the discovery. Second, so in that context, you'd be examining the diligence of the lawyer. Now, the defendant's diligence or lack thereof may be relevant in a scenario where it appeared like they were trying to delay the trial or they were doing it just to game the system or delay the inevitable trial, but in this case, there's no evidence that Mr. Smith was not diligent. Also, we know from his pre-sentence report, he had no criminal history, no experience with the criminal justice system as a defendant, and would not, cannot be expected to know how likely it'd be to get a continuance, and it's just, I think, a fact that a case, a federal case of this magnitude is going to be expensive, and it takes an average person a great deal of time and maneuvering to raise the funds required to retain a lawyer for this case. So we don't know that because we don't know when he had the money sufficient to pay the counsel, where he got it, why he got it, and at least I don't. Am I wrong about that? The very specifics are not in the record, but there are two statements related to this issue. By the, I'm referring to him as former attorney or the appointed attorney. He indicates that Mr. Smith had been attempting to hire counsel, and he should be able to retain him soon, and as soon as that's done, then replacement counsel would file a notice of appearance. I take that to mean that he was on the verge of obtaining the funds, and then as soon as that happened, they were transferred to the lawyer, and the notice of appearance was filed. So it appears that the money was not yet in Mr. Smith's possession at the time of the pretrial conference, but shortly thereafter was, which allowed him to retain the new lawyer who filed a notice of appearance. And I am aware that the district court advised prior counsel that something along the lines of, you can tell the defendant he can hire whoever he wants, but you better let that new lawyer know we're going to trial on X date. There's no evidence that that admonition was conveyed to replacement counsel. Moreover, at page 95 of appendix volume 1, paragraph 9 of replacement counsel's declaration, there's a statement that I, replacement counsel, have spoken to appointed counsel, and I have this information about the discovery. The fact that he included one statement, one paragraph, regarding communication between him and prior counsel on this your discovery, and does not mention the statement regarding the warning about the trial date, I think indicates that it was not related to him. Secondly, that's what, that's not really him, what do you mean? Not related to him. Not related to him. I guess I'm not understanding what difference it makes if the replacement counsel knew of the admonition. It wasn't, wasn't the court's obligation to tell the new counsel what it said a few weeks earlier, was it? Yes, your honor. I think we'd be in a worse position if a lawyer is told, very unlikely you're going to get a continuance, and you come in anyway. It's difficult to say, well, I need more time. I didn't know, you know. But if a judge says, if you want to come in, know that you're coming in with the circumstances that I'm not inclined to continue the trial, I think you . . . I thought that's what the judge did say. He did, your honor. I'm kind of confused, I guess. I apologize. The judge said that to the former counsel. Correct. To the assistant federal public defender on February 15th, right? Yes. And then the judge says, you're going to need, you tell your defendant he's going to need to be prepared to go to trial, right? More or less, yes. If he gets new counsel? Yes. So, defendant gets new counsel. Presumably, what I'm asking is, whose responsibility is it to pass on to new counsel what the judge has said? It's not the court's responsibility. Well, I . . . I mean, you seem to be suggesting the new counsel wasn't aware that he was going to have to jump right in and that he wouldn't get a continuance granted. I'm not sure whose problem that is. Well, ultimately, Mr. Smith's problem is his problem because he's going to trial with a lawyer that's not ready. But I would say it would be . . . But he was warned, is what I'm saying. You seem to be suggesting this attorney . . . Okay. Maybe I'm misunderstanding you. I think, I thought you were suggesting the retained attorney wasn't warned. I am suggesting that. And I'm saying, whose obligation is that? I would say it would be both prior counsel . . . because the court gave them an instruction to tell this, make sure this information is passed along. Number two, I would think it would be the court's obligation to make sure that lawyer was aware of this before he accepted the notice of appearance, the substitution of counsel, and he granted prior counsel's motion to withdraw. The court still has an obligation to make sure a fair trial goes forward. So he could . . . So, I didn't understand that to be your argument, that you're arguing there was an abuse of discretion because the court in accepting the retained counsel's entry of appearance or representation didn't advise the new retained counsel of . . . that he would be moving forward? That is not the argument, Your Honor. Okay. I'm just checking. Regarding this one granular point, which is not dispositive, I am merely pointing out that if it would have been better for the district court, you could have held a hearing. May that lawyer come in and say, just so you know, this is the trial date and I'm not planning on continuing this trial for A, B, and C reason. Do you still want to come in on this case? He could have not let prior counsel be relieved until he ensured . . . the district court ensured that the new counsel was well aware of the situation into which he was stepping. Do you have any case law that would support that there's such an obligation on a district court? On the specific issue of a reluctance to grant a continuance? Before you can let one counsel out and another counsel in, you have to pull in the new counsel and say, there's a trial date set and I'm not moving it. No. The situation is very unique. I've never seen a case where a district judge pretty much telegraphs the pre-ruling on an issue before . . . I see it. I mean, we see it with some regularity. They say, you know, if you want to change counsel, fine, but the trial date is what the trial date is and we're moving forward. And you know, when you enter an appearance in a case, you ought to be aware whether there's a scheduling order in place and a trial date set. And I don't think you can presume that any of those things are going to change. But getting back to my question about who we look at, I think our case law is pretty clear in McLaughlin. We don't really care about the diligence of the new counsel. We're looking at the diligence of the party who's seeking the continuance. So even though counsel comes in and within five days requests a continuance, that's not the test for that prong. The prong is whether your client should have tried to get a replacement counsel sooner, should have done something to be more diligent about it. Well, I don't think there's any . . . the record is pretty much silent on the steps he took or what he had to do to get the money. There's no evidence that he had the ability to retain counsel earlier and chose not to or waited until the 11th hour. But is that up to him? He's the one who needs to show the diligence, isn't he? In other words, if he came in and he had an affidavit and said, I've been badgering my mother for months and finally she coughed it up so I can get a lawyer, that's one thing. But we don't have anything. All we have are the two statements to which I alluded earlier. What about the need here for a continuance? You say 2,000 or whatever pages that you mentioned, but we see cases and they have degrees of difficulty. This one seems pretty straightforward. Well, I would say the need for more time is not just the volume of discovery, but that some of it was of a very technical nature. You mean Motorola and the video camera? Yes. Was any of it disputed? Well, I think that might be the point. It would be difficult, if not impossible, to dispute it without a thorough technical understanding of that data, which you could only gain, unless this lawyer was a scientist in his prior life, from an expert or a defense expert to explain and interpret all this data and say, what they're saying this printout means, it could actually mean this, or there's some ambiguity on these figures. I mean, there was like computer printouts that were interpreted by the government's expert on what that meant regarding when cameras were turned on and turned off, like very technical data that is outside of the realm of normal criminal defense. Okay, then, appreciate that answer. You're really running out of time here and we haven't talked about 1519. Do you want to do that? Yes. If I could just finish on the continuance, I think if you apply the standards as articulated in the Cervantes case, a continuance still should have been granted and it was not right to make Mr. Smith go to trial with a lawyer that was not properly prepared. Regarding 1519, there was nothing omitted, fabricated, altered, deleted regarding the two recordings that form the basis of the 1519 convictions. There was two different recordings and they were transmitted from the devices to the uploading docking station at the police department in their complete, unaltered, unmutilated form. Well, it was recording and he turned it off. Isn't that altering the record? The record would have been a full recording of what happened in that police car, but he made a decision to alter its ability to continue recording. He destroyed its ability to continue recording so that he could conceal and cover up and falsify what was recorded. Well, I would respectfully disagree on the claim that he destroyed its ability because the camera presumably still worked. Well, it can't work if it's not turned on, so you pretty much destroy its ability to record if you turn the off switch. No, because it still possesses the ability. He's just not using the ability to record it. Well, the dash cam, I mean, it's his dash cam. Was it his dash cam or his? I'm sorry, it was those two phones. There was a one count for the dash cam one count. I mean, those are designed to record the stop and this was or started out as, certainly, a stop and so presumably he would have continued to record and yet he altered that recording and ultimately we only get a transcript of that recording or we see it only in part because he turned it off and turned it back on. I would say he did not alter it because he did not change the recording. He stopped it, which violates a slew of police protocols and rules and conduct. So he committed all those violations, but he did not falsify a record. He did not delete part of it. He did not stop it and then turn it back on. Well, I agree. Some of those terms, those terms don't really work, but the closest one certainly would be alter. He did alter what was a continuing recording. It would have been, he would have continued to record had he not intentionally altered that recording by turning it off, preventing it. You see what I'm saying? Isn't that a reasonable interpretation? I would not interpret it as altering because the recording was not modified or changed. I see that I'm over my time already. Thank you. Thank you, Counsel. May it please the Court. Christopher Wang on behalf of the United States. The evidence showed and the jury found that Defendant Jeffrey Smith sexually assaulted a female motorist at a traffic stop on his very first solo shift as a police officer in violation of 18 U.S. C. 242 and falsified records by manually deactivating his body worn and dashboard cameras before the assault in violation of 18 U.S. C. 1519. Smith does not challenge the sufficiency of the evidence for his Section 242 conviction and none of his arguments weren't overturning his convictions or sentence or granting him a new trial. I'd like to turn first to the Section 1519 issue unless this Court would prefer that I discuss the continuance. The District Court correctly denied Smith's motion to dismiss the Section 1519 counts. 18 U.S. C. 1519 prohibits a defendant from, among other things, knowingly altering, concealing, covering up, or falsifying a record to obstruct an investigation. Contrary to Smith's contention, Section 1519 does not require an affirmative act of misrepresentation. The plain meaning of these verbs and their interpretation by the relevant precedent encompasses omissions of material fact. Thus, in Moyer and Lanham, the defendant officers, knowing omission of information from a written report they created, constituted knowing falsification of a record That seems completely different to me. And let me tell you why. When you have a fact that is not, as someone confessed, or something like that, that's not put into a report, nobody knows that. You have four corners of the document. But with a recording like this one, it could easily be seen, oh, we're missing eight minutes or whatever it was. So I don't know how those cases are really very persuasive. Well, the record in this issue, in this case, is the video documentation of Smith's interaction with K.H. and J.G. And when he, the stop started off as a completely lawful traffic stop for speeding. It devolved into a criminal assault. And by turning off the cameras before he ordered K.H. into the front seat of his patrol car and sexually assaulted her, he misrepresented the fact that Smith was a lawyer. Okay, well, when he turned off, as my understanding, and correct me if I'm wrong, when he turned off the dash cam, it has a feature that continues to record for a little bit. And so it showed her getting into the car, even though he turned it off. That is correct, Your Honor. You have a new record. And the new record might be incomplete, but I don't know how it's altered. If you could speak to that. Well, I think maybe the falsification is maybe the best bucket to put this into, because falsification is to misrepresent a record. I submit the record is the entirety of the video documentation of his interaction with these two individuals. And by turning his camera off, he misrepresented what actually happened during the trafficking. Did he say, here I am reporting after my first shift ever solo, and I've got some information on the tape, and I never turned the off button off? Never turned the off button on. How about that? I never turned the button off. He didn't ever say that. He just turned in his tape. No, no. Well, let's say Mr. Smith had recorded the entire encounter, then went back to the police station and deleted the incriminating evidence of his assault of KH. He appears to concede in his brief that that would constitute a violation of 1519. And I would submit there's no real functional difference between turning the camera off so the actual assault is not recorded than taking the video and going back to the police station and deleting the incriminating evidence. I mean, it seems like they're both covering up criminal activity. That's the question. The language of the statute, there is a difference. You continue to refer to the misrepresentation. There's no language about misrepresentation of any record. That's not what this is about. The statute definitely wasn't written, I'm not sure how old it is, 2002. I don't think it was written with this type of record in mind, you know, a recording, a continuous type recording. But, you know, that said, that doesn't mean it necessarily doesn't apply, but you've got to tell us how it applies. And these words, these verbs that are used here, there's no misrepresent, there's no misrepresent the record. There's no, it destroys, mutilates, conceals, covers up, falsifies, makes a false entry. And alters, to me, might be there, and I guess that's why I'm asking you to address alters. But to me, the rest of this is not what we have here. To answer your first question. And we don't have a misrepresentation in that statute either. Well, I refer this court to page 20 of our brief where we basically use the dictionary definitions of the specific terms that were cited in the government superseding indictment, alter, conceal, cover up, and falsify. And falsify, one of the definitions of falsify is to misrepresent. And that's the term that the Lanham and Moyer cases used in determining that the defendant police officer Well, you've got to put it with, you're not just talking about falsifying anything, you're talking about falsifying a record. Those terms are important, record, document, or tangible object. And then it talks about the intent. It seems to be, I think in 2002 they were referring to tangible records, tangible documents, tangible objects. I think that's what they meant. But we, you know, everything's digital these days. And we're trying to, we're trying to sort of pound this case into that statute and I'm not sure it works. Well, Your Honor, I'd like to refer you to a case that I discovered in my preparation for oral argument. It's called United States v. Davis. It's a case from the Eastern District of Missouri. Number 4 colon dash 24 CR 343. In this particular case, the United States Attorney's Office charged the defendant police officer with section 1519 violation for turning off his body camera before concluding his interaction with the victim. The defendant police officer moved to dismiss this count. And the court rejected this argument based on the ground under statutory interpretation that a body camera recording constitutes a record under the meaning of section 1519. I'll give this court the what's there. Well, I don't think any of us would dispute that the video created from either the dashboard or the body camera is a record. That's not the issue. The issue is if you turn it off, are you altering, destroying, mutilating, concealing, covering up, falsifying, or making a false entry in that record? I mean, the government's answer is yes. You're altering the record and all these other terms that the government. Well, are you altering the record if you actually delete? You go back, oh, there's some bad stuff on here and delete it. That's a classic altering, right? That's correct, Your Honor. And your altering is altering light. It's altering that doesn't have an alter other than hitting an off button. Well, the effect is the same, Your Honor. It prevents the recording. Well, the effect is different. One is that there is a record and you manipulate that record. The other is you don't create a record. Well, the record is the entire encounter with the recording. Well, that's not the entire encounter is not a record. You know, my interaction with the motorist itself is not a record. It's the recording of that interaction that's a record. Would you agree with that? That's correct. And the recording did record the first part of the interaction, the legal part. And that recording that exists wasn't tampered with, right? That's correct. Okay. So your argument is by not recording the entire encounter, they have altered, destroyed, he has, altered, destroyed, mutilated, et cetera, the record. That is correct. If I say we interpret, construe criminal statute strictly, what do you say? Well, I think you're referring to the rule of lenity, Your Honor. And the rule of lenity only requires that ambiguities be construed in favor of the defendant in determining the breadth of a criminal statute. And our position is that the criminal statute here is not ambiguous, that these terms clearly encompass omissions of material fact. When you go just by the dictionary definitions and you go by these cases that we've cited, Singh, Lanham, and Moyer that interpret these terms. And Smith has not cited a single case in which a court has held that an omission is not covered by Section 1519. Yeah, those are different kinds of omissions. So let's say there's drugs in the evidence room at the police station. And there is a record there of everyone who goes into that room. But I don't want to sign it because I'm going to steal drugs. I wait for the guy supervising to go to the bathroom and I walk in and I steal drugs and I leave without filling in the record. Have I altered or destroyed the record of who went into the room? Well, I don't know if Section 1519 would apply to somebody you basically modifying somebody else's record. It just sort of seems to me that it applies to you. You think that it has to be your own record? I mean, Your Honor, I think that's sort of the general way that Section 1519 is applied. I think maybe in your particular, I don't know how often your particular hypothetical occurs, but in the vast majority of cases, I mean, it sort of seems by the plain language, yes, it would apply. It would apply because I didn't sign in when I went into the evidence room, that therefore I altered that record of who goes into the evidence room. Yeah, your hypothetical, it does seem that would be a Section 1519 violation by not accurately reflecting who entered the evidence room. You are essentially misrepresenting the record. I wanted to ask you a little bit about the sentence. He ends up with a sentence of 480 months for this, and I wondered what part of that sentence would be impacted by the 1519. How did that impact the sentence? Well, he was sentenced to 480 months for the Section 242 conviction, which he does not appeal. He was sentenced to 240 months for each of the 1519 counts to run concurrently. So were this court to reverse his 1519 convictions and vacate his sentences, he would still have this 480-month sentence for his Section 242 conviction. Now, perhaps the court might, the district court might decide that his 480-month sentence was dependent on three convictions rather than one. I imagine that the parties would go back to the district court. The district courts might ask for briefing on whether the fact that he only has one conviction rather than three should affect his sentence, whether it should be lower than 480 months. But right now, the 480 months is for his Section 242 conviction alone. Thank you. I don't know if the court doesn't have any other questions on 1519. I'll turn very quickly to continuance. To answer Judge McHugh's question, it is the diligence of the defendant in a case such as this one where the continuance is based on the entrance of new counsel into the case. And this case is very similar to Cervantes in that Smith had a federal public defender for six months since his arraignment and suddenly gets a new retained counsel with three weeks left to go before the trial scheduled date. The district court, you know, the decision on whether to not deny continuance is left to the district court for very good reason. The district court is on the ground. They understand, you know, how complex the case is. They understand what kind of inconvenience is going to be visited upon the court, particularly in light of McGirt, the government's witnesses, and the prosecution. And the court made a reasonable decision here that, no, he wasn't diligent in procuring new counsel. As I think Judge Morris observed, that retained counsel, I mean, the federal public defender was specifically warned that the court was not going to grant a continuance, not likely to grant a continuance. I should also note that Smith was at that pretrial conference, and Smith easily could have told his new retained counsel, like, I like you. I want you to be my attorney. But the district court came out and said, no, we're not, he's not likely to grant a continuance if you enter the case. And putting aside diligence, Smith has failed to fulfill the other three factors that this court uses in reviewing the denial of a continuance, and most importantly, fails to show material prejudice. He doesn't allege any kind of substantial favorable evidence that his counsel would have uncovered had he been given more time. He doesn't allege that his counsel was defective in any way or was inadequately prepared. And as the district court recognized, this is, you know, a very run-of-the-mill case. It's not complex. And I think finally, we note that Smith does not challenge his Section 242 conviction, basically does not challenge his Section 1519 conviction. So it's really hard to say what kind of favorable evidence would have called into question his guilt on these counts. I see that my time has expired. Unless this court has additional questions, I'd like to rest on the briefs and respectfully request that this court affirm Smith's convictions and sentence. Thank you, counsel. Did counsel have any rebuttal time? All right. Well, let's give him a minute and a half. Thank you. In response to the government's arguments, I do think I have challenged the conviction for 242 because if the court were to reverse on the continuance issue, that would cover the 242 conviction. Number two, I do think he's made all the showings regarding the continuance objectives, and I have alleged and argued that defense counsel was not prepared because it would be impossible to be prepared in that short amount of time. And I think those are all the points that I wanted to make. Other than the cases cited by the government, Lanham, Moyer, Singh, were all very different regarding omissions because key details were left out or omitted that created a false impression of a different document or record. So I submit on that. Thank you. All right. Very well. Thank you both for your arguments and briefing. The case is submitted. Counsel are excused, and the court will stand in recess subject to call.